UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRIAN K. TACOVELLI,<br><br>               Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>               Defendant. | Case No. C13-2147-RAJ-BAT<br><br>**REPORT AND RECOMMENDATION** |

Brian K. Tacovelli seeks review of the denial of his Supplemental Security Income and Disability Insurance Benefits applications. He contends the ALJ erred by rejecting the opinions of treating psychiatrist Paul Grekin, M.D., and treating nurse practitioner Patricia Spach, ARNP, and by relying on the grids at step five. Dkt. 12. For the reasons discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

## BACKGROUND

Mr. Tacovelli is currently 44 years old, has a college degree, and has worked as a bartender. Tr. 208, 244, 248. On January 10, 2011, he applied for benefits, alleging disability as of December 10, 2008. Tr. 208, 211. After his applications were denied, the ALJ conducted a hearing, and on July 19, 2012, issued a decision finding Mr. Tacovelli not disabled. Tr. 17-34. As the Appeals Council denied Mr. Tacovelli's request for review, the ALJ's decision is the

REPORT AND RECOMMENDATION - 1

Commissioner's final decision.  Tr. 1.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found that Mr. Tacovelli had not engaged in substantial gainful activity since the alleged onset date; he had the following severe impairments: seizures, affective disorders, and anxiety disorders; and these impairments did not meet or equal a listed impairment.[2]  Tr. 19-20.  The ALJ found that Mr. Tacovelli had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he must avoid concentrated exposure to extreme cold, extreme heat, noise, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards such as machinery and heights; he is capable of performing simple and complex tasks; he is limited to infrequent and superficial public contact; and he requires a predictable work environment with minimal changes.  Tr. 22.  The ALJ found that Mr. Tacovelli was unable to perform any past relevant work, but he could perform other jobs that exist in significant numbers in the national economy.  Tr. 38-39.  The ALJ therefore concluded that Mr. Tacovelli was not disabled.  Tr. 33.

## DISCUSSION

**A.     Paul Grekin, Ph.D.**

Mr. Tacovelli argues that the ALJ erred by rejecting the opinions of treating psychiatrist Paul Grekin, Ph.D.  Dkt. 12 at 4.  The opinion of a treating doctor is entitled to the most weight of all.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where it is not contradicted by another doctor, the ALJ may reject a treating doctor's opinion only for "clear and convincing reasons."  *Id.* at 830-31.  Where contradicted, the ALJ may not reject a treating doctor's opinion without "specific and legitimate reasons" that are supported by substantial evidence in the

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

record.  *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation of the facts and evidence, and making findings.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  The ALJ must do more than offer his conclusions; he must also explain why his interpretation, rather than the treating doctor's interpretation, is correct.  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

      Dr. Grekin began treating Mr. Tacovelli in November 2010.  Tr. 946-48.  In July 2011, Dr. Grekin wrote a letter in which he opined that Mr. Tacovelli's symptoms "severely interfere with his ability to reliably manage the pressures, social demands and attendance requirements of employment."  Tr. 648.  In October 2011, Dr. Grekin completed a medical source statement in which he reported clinical findings such as excessive energy, racing thoughts, and mood instability.  He opined that Mr. Tacovelli would be absent from work more than three times a month due to his impairments.  And he opined that Mr. Tacovelli had moderate or marked loss in numerous areas, including his ability to maintain attention and concentration for extended periods and work with others.  Tr. 769-73.

      The ALJ gave Dr. Grekin's opinions little weight.  The ALJ found that a mental status exam by Dr. Grekin was largely unremarkable in November 2010 and many of the symptoms Dr. Grekin reported in October 2011 were not reflected in his initial evaluation, supporting a finding that many of these symptoms were based on Mr. Tacovelli's self-reports, which the ALJ found to be not fully credible.  Tr. 27.  The Commissioner concedes that the fact that many of the symptoms Dr. Grekin recorded in October 2011 were not present in his November 2010 initial evaluation was not a legitimate reason for rejecting the opinion.  Dkt. 18 at 5 n.2.  In addition, an

REPORT AND RECOMMENDATION - 3

ALJ does not provide adequate reasons for rejecting an examining doctor's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001). Dr. Grekin did not question Mr. Tacovelli's reports and supported his opinion with his own observations. This was not a valid reason to reject the opinion.

The ALJ found that Dr. Grekin did not have the benefit of reviewing all of Mr. Tacovelli's medical records. Tr. 27. A treating doctor's opinion is due the greatest weight because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). A treating doctor rarely, if ever, reviews a patient's entire medical record in the way a consulting doctor does. And yet, it is the former, not the latter, whose opinion is entitled to the greatest weight. The fact that Dr. Grekin did not review of all of Mr. Tacovelli's medical records is not specific to him; it would be true of most, if not all, treating doctors—particularly specialists such as psychiatrists. Such a generic fact about a treating doctor cannot be deemed to be a specific reason to reject the opinion. This was not a valid reason to reject Dr. Grekin's opinion.

And the ALJ found that Dr. Grekin's findings were "unsupported by objective evidence, inconsistent with some of his own examination findings, and inconsistent with the claimant's ability to engage in a range of activities." Tr. 27. To merely state that medical opinions are not supported by sufficient objective findings "does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim." *Embrey*, 849 F.2d at 421-22. The Court finds the same is true of the ALJ's other conclusory assertions. These were not valid reasons to reject Dr. Grekin's opinions.

REPORT AND RECOMMENDATION - 4

Where an ALJ fails to provide adequate reasons for rejecting a treating doctor's opinion, the Court may credit that opinion as a matter of law. *See Lester*, 81 F.3d at 834. However, courts retain flexibility in applying the credit as true theory. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003). Where it is not clear from the record that the ALJ would be required to award benefits if the evidence were credited, the Court may remand for further determinations. *Id.* The Court finds that is the case here, and recommends remand for further consideration of Dr. Grekin's opinion.

B.   Patricia Spach, ARNP

Mr. Tacovelli argues that the ALJ erred by rejecting the opinion of treating nurse practitioner Patricia Spach, ARNP. Dkt. 12 at 16. A nurse practitioner is not an acceptable medical source who can give medical opinions. *See* 20 C.F.R. § 404.1513(a). The ALJ may evaluate opinions of other medical sources, including nurse practitioners, using the same factors applied to evaluate medical opinions of acceptable medical sources. SSR 06-03p. These factors include the length and frequency of the treating relationship, how consistent the opinion is with other evidence, the evidence the source presents to support the opinion, how well the source explains the opinion, whether the source has a specialty or area of expertise related to the impairment, as well as any other relevant factors. *Id.*; *see also* 20 C.F.R. § 404.1527(d). But the ALJ may give less weight to opinions of other medical sources than to those of acceptable medical sources. SSR 06-03p. The ALJ must give germane reasons specific to the witness for rejecting opinions from other sources that are not acceptable medical sources. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

Ms. Spach began treating Mr. Tacovelli in November 2008. Tr. 700-02. In March 2009, she completed a psychological evaluation form for the Washington State Department of Social

REPORT AND RECOMMENDATION - 5

and Health Services. She diagnosed Mr. Tacovelli with bipolar I disorder, suicidal ideation, polysubstance abuse in remission, and polysubstance dependence. She opined that Mr. Tacovelli had moderate to marked cognitive impairments and mild to severe social impairments. She opined that Mr. Tacovelli was improving with medication and would be able to work if he had a period of mental health care and was stabilized. Tr. 572-75.

The ALJ gave less weight to this evidence because Ms. Spach is not an acceptable medical source and because DSHS uses different criteria to assess eligibility for assistance than the Social Security Administration. The ALJ noted, however, that the evidence showed that Mr. Tacovelli's mental impairments were amenable to treatment. Tr. 28.

The ALJ's rejection of Ms. Spach's opinion because she is not an acceptable medical source is not a reason specific to Ms. Spach. This is true of all "other" medical sources and, if this in and of itself were sufficient to reject their opinions, the requirement to give specific reasons germane to each witness would be meaningless.

The ALJ's rejection of the opinion because DSHS uses different criteria to assess eligibility for assistance is also flawed. It is true that the ultimate decision on the issue of disability is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). However, the DSHS form does not contain an opinion that Mr. Tacovelli is or is not "disabled." Rather, it contains Ms. Spach's opinions about his functional limitations in various areas. This exactly is the type of evidence that the ALJ must consider and comment upon. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d) (requiring that every medical opinion be evaluated, regardless of its source). Moreover, the purpose for which medical reports are made does not provide a legitimate basis for rejecting them. *Lester*, 81 F.3d at 832. The ALJ's reason for rejecting the opinion disregards the substance of the opinion, focusing merely on its form. The fact that Ms.

REPORT AND RECOMMENDATION - 6

Spach's opinions were expressed on a DSHS form was not a valid reason to reject her opinions about Mr. Tacovelli's functional limitations.

The ALJ did not provide germane reasons specific to Ms. Spach for rejecting her opinion. Accordingly, the ALJ should be directed to reevaluate her opinion on remand.

### C. Use of the grids

Mr. Tacovelli argues that the ALJ failed to meet his burden at step five of producing evidence that there are other jobs existing in significant numbers in the national economy that Mr. Tacovelli can perform. Dkt 12 at 19.

At step five of the disability determination process, the Commissioner bears the burden to produce evidence of other jobs existing in significant numbers in the national economy that the claimant can perform in light of his residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett v. Apfel*, 180 F.3d 1094, 1099-1100 (9th Cir. 1999). The Commissioner can meet this burden either by the testimony of a vocational expert, or by reference to the Medical-Vocational Guidelines ("the grids") at 20 C.F.R. Pt. 404, subpt. P, app. 2. *Tackett*, 180 F.3d at 1099. The grids identify whether jobs requiring specific combinations of the four vocational factors (physical ability, age, education, and work experience) exist in significant numbers in the national economy. *See Heckler v. Campbell*, 461 U.S. 458, 461 (1983). If the grids accurately and completely describe a claimant's qualifications, an ALJ may apply the grids instead of taking testimony from a vocational expert. *Holohan v. Massanari*, 246 F.3d 1195, 1208-09 (9th Cir. 2001). If they do not, then the ALJ must also hear testimony from a vocational expert. *Id.*

The grids provide for evaluation of claimants with both exertional and nonexertional limitations. *Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir. 1986). It is only when a claimant's

REPORT AND RECOMMENDATION - 7

nonexertional limitations are "'sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations'" that the grids are inapplicable. *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007) (quoting *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988) (internal quotation marks omitted)). In such a case, vocational expert testimony is required. *Id.*

Mr. Tacovelli argues that the ALJ erred by relying solely on the grids because his nonexertional limitations—the need to avoid concentrated exposure to extreme cold, extreme heat, noise, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards such as machinery and heights; the limitation to infrequent and superficial public contact; and the need for a predictable environment with minimal changes—are significant and preclude reliance on the grids. Dkt. 12 at 21. The Court agrees.

The ALJ found that Mr. Tacovelli's nonexertional limitations had little or no effect on the occupational base of unskilled work at all exertional levels. Tr. 31. But this finding does not square with all of the mental limitations the ALJ found. Specifically, the ALJ found that Mr. Tacovelli needs a predictable environment with minimal changes. But the ability to perform competitive, remunerative unskilled work requires the ability to deal with changes in a routine work setting. *See* Social Security Ruling ("SSR") 85-15. It would seem that Mr. Tacovelli's limitation is in direct conflict with this requirement.

In addition, the ALJ made no findings as to whether Mr. Tacovelli's numerous environmental restrictions significantly limit the range of work he can perform. Dkt. 12 at 22. Although not all environmental restrictions erode the base of work at all exertional levels, "[w]here the environmental restriction falls between very little and very excessive, resolution of the issue will generally require consultation or occupational reference materials or the services of

a VS [vocational specialist]." SSR 85-15.  Mr. Tacovelli's environmental restrictions seem to fit between the two extremes described here.

The Court finds that the ALJ erred by relying solely on the grids to evaluate Mr. Tacovelli's ability to perform other work.  On remand, after the ALJ has reevaluated the medical evidence and Mr. Tacovelli's residual functional capacity, the ALJ should obtain the assistance of a vocational expert to reevaluate step five.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings.  On remand, the ALJ should reevaluate the opinions of Dr. Grekin and Ms. Spach, reevaluate Mr. Tacovelli's residual functional capacity, and complete the remainder of the five-step disability evaluation process, calling on the services of a vocational expert at step five.

A proposed order accompanies this Report and Recommendation.  Objections, if any, to this Report and Recommendation must be filed and served no later than **June 30, 2014**.  If no objections are filed, the matter will be ready for the Court's consideration on that day.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses shall not exceed twelve pages.  The failure to timely object may affect the right to appeal.

DATED this 16th day of June, 2014.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 9